IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 3:19-CR-160-TAV-HBG |
| DOMIQUE CHANDLER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on Defendant Domique Chandler's Motion for Release: Changed Circumstances [Doc. 44], filed on April 1, 2020. The Defendant moves for a detention hearing and temporary emergency release to home confinement and the supervision of a third-party custodian, pending the end of the COVID-19 pandemic.

The Defendant requests release pursuant to 18 U.S.C. § 3142(i), which provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The Defendant argues that the COVID-19 pandemic provides a "compelling reason" for his release, because he has chronic health conditions (hypertension and borderline diabetes) that place him at a higher risk for becoming seriously ill or dying, if he contracts COVID-19. He maintains that it is impossible for the Blount County Detention Center, where he is detained, to prevent the entry of COVID-19, due to the constant influx of employees

and new inmates, the close quarters, the inability to maintain proper hygiene, and the nature of the virus, which is transmitted through the air.

The Court held a detention hearing on the instant motion with Defendant appearing via videoconference on April 29, 2020.[1] Assistant United States Attorneys Anne-Marie Svolto and David Lewen appeared on behalf of the Government and were present in the courtroom. Assistant Federal Defender Mary Margaret Kincaid represented Defendant Chandler and appeared by video. Along with the parties' filings[2] and arguments, the Court has considered the testimony of Task Force Officer ("TFO") Nathan Stinnett and Chief Chris Cantrell, along with the exhibits offered by the parties, to include the Amended Pretrial Services Report of April 28, 2020 [Exh. 15].

In consideration of releasing the Defendant pending trial, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) and finds that the testimony and exhibits presented at the detention hearing, as well as the Amended Pretrial Services Report ("PSR"), establish by clear and convincing evidence that Defendant is a danger to the community, as well as by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the Defendant's appearance as required. Additionally, the undersigned finds that Defendant has failed to show a compelling reason for his temporary release with respect to the risk of serious complications from contracting COVID-19. Accordingly, Defendant Chandler is **ORDERED DETAINED** pending further proceedings in this case.

---

[1] Defendant filed a consent [Doc. 52] to appear by video conference on April 29, 2020, and appeared that day via videoconference from the Blount County Detention Center.

[2] In addition to the Defendant's motion [Doc. 44], the Court has considered the following filings: The Government filed a response in opposition [Doc. 48] on April 7, 2020. Defendant filed a Supplement to Motion for Release [Doc. 50] on April 27, 2020, and the Government responded [Doc. 51] to the supplement on the following day.

I.   ANALYSIS

Defendant Chandler is charged [Doc. 1] with conspiracy to possess and distribute fifty grams or more of methamphetamine (Count One) and one hundred grams or more of heroin (Count Two), in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).  Defendant is also charged with possessing methamphetamine (Count Three) and heroin (Count Four) with intent to distribute on April 3, 2019, and with possessing a firearm in furtherance of drug trafficking (Count Five) on that same day.  Defendant Chandler requested a detention hearing at his initial appearance in this case on December 13, 2019.  However, prior to his scheduled detention hearing, he waived [Doc. 34] the hearing, reserving his right to request one at a later date.  The Court entered an Order of Detention [Doc. 35].

Defendant Chandler now moves [Docs. 44 & 50] for release, arguing that conditions exist that will ensure his appearance at trial and the safety of the community.  The Defendant asks to be placed on home confinement in the home of a third-party custodian.  He proposes to live with his fiancé Audraneisha Thomas or with his father, Johnny Towns, both of whom he proffers as third-party custodians.  The Defendant, who is currently detained at the Blount County Jail, argues that the jail cannot prevent the spread of COVID-19.  He argues that even if the Court finds that he presents a danger to the community, the serious threat that he will suffer life-threatening complications from COVID-19, if the virus spreads to the jail, overcomes the presumption of detention and warrants his release.

Under the Bail Reform Act, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g).  In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of

3

Case 3:19-cr-00160-TAV-HBG   Document 58   Filed 05/05/20   Page 3 of 17   PageID #: 319

the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release."  18 U.S.C § 3142(g)(1)-(4). Additionally, in an April 6, 2020 Memorandum, United States Attorney General William Barr stated that "the current COVID-19 pandemic requires that we also ensure we are giving appropriate weight to the potential risks facing certain individuals from being remanded to federal custody."  *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download.

Finally, the Court observes that in the instant case, a rebuttable presumption applies, requiring the Court to presume that no condition or combination of conditions will reasonably assure the Defendant's appearance or the safety of the community.  18 U.S.C. § 3142(e)(3)(A). In this respect, the Court finds probable cause, in the form of the Indictment, to believe that the Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more.  *See* 18 U.S.C. § 3142(e)(3)(A); *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption).  This presumption places the burden of production with the Defendant, who must "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *Id*. The Government retains the burden of persuasion. *Stone*, 608 F.3d at 947.

Guided by these provisions of the Bail Reform Act, the Court will first address the respective section 3142(g) factors, in light of the rebuttable presumption, and then analyze Defendant's specific arguments related to the COVID-19 virus.

### A.     Section 3142(g) Factors

First, the Court finds that the nature and circumstances of the offenses charged argue in favor of detention. 18 U.S.C. § 3142(g)(1). As set out in detail above, the Defendant is charged [Doc. 1] with two drug conspiracies, two substantive counts of drug distribution, and a single count of possessing a firearm in furtherance of drug trafficking. These charges create a rebuttable presumption that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The charges are also among those specifically noted for consideration under the first factor, as they involve both controlled substances and a firearm. 18 U.S.C. § 3142(g)(1). The Court finds this factor supports detention.

The second factor relates to the "weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d 939, 948 (6th Cir. 2010). Further, our appellate court "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Id.* at 947 n.6. At the detention hearing, the Government introduced photographs [Exh. 1-2], which were extracted from a video made on a recording device worn by a confidential source during a controlled drug buy at Defendant Chandler's apartment. The photographs depict Defendant

5

Chandler holding a firearm [Exh. 1] and holding a clear package containing a white substance [Exh. 2], which TFO Stinnett testified was methamphetamine. Additionally, TFO Stinnett testified that law enforcement later searched the Defendant's apartment pursuant to a search warrant and seized methamphetamine, heroin, and a different firearm. This evidence weighs in favor of detention. *See Stone*, 608 F.3d at 947 n.6 (observing that "drug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (finding drug trafficking to be inherently dangerous).

TFO Stinnett also testified, based upon his experience as a law enforcement officer, the Defendant's tattoos [Exhs. 4-5, 7-10] indicate that he is a member of the Traveling Vice Lords, a violent and aggressive street gang. TFO Stinnett said the Defendant's TOMIS record [Exh. 6] reveals the Defendant is a self-admitted member of the Vice Lords, with the rank of "enforcer." The PSR [Exh. 15, p.6] relates that the Defendant's NCIC and TOMIS records show the Defendant to be a member of the Vice Lords gang. The PSR further reveals that the Defendant said he became a gang member at age thirteen but has not associated with the gang following his release from prison. The PSR states the Defendant was released from prison on August 6, 2018, and that Ms. Thomas and Mr. Towns both state that the Defendant has not shown any indication of gang association following his release from prison. Chief Cantrell testified that the Defendant's intake questionnaire states that the Defendant answered "yes" to whether he was currently or previously in a gang, which the Defendant purportedly identified as the Latin Kings. The Court finds this information supports a finding that Defendant Chandler is affiliated with a gang.

More importantly, the Court finds the Defendants actions, rather than his mere affiliations,[3] warrant a finding of dangerousness. The PSR [Exh. 15, p.6] reveals the Defendant received an eight-year prison sentence for convictions for two counts of aggravated robbery. While serving that sentence, the PSR states [Exh. 15, p.7] that between August 2011 and November 2014, the Defendant incurred thirteen infractions on his prison disciplinary record. The Defendant's infractions include twice possessing a deadly weapon, two incidents of fighting, and a single incident of assaulting staff with his fists. Moreover, the Defendant's text exchanges with Ms. Thomas [Exhs. 3a-3c] indicate that he has engaged in physical violence against and to intimidate fellow inmates at the jail. This evidence supports a finding that the weight of the evidence of the Defendant's dangerousness is strong.

The third factor relates to the Defendant's history and characteristics to include his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Defendant points to his ties to the Eastern District of Tennessee, stating that he is a lifelong resident of this community. However, the PSR indicates the Defendant has had no steady residence, since his release from prison on August 6, 2018. Moreover, the Defendant has

---

[3] Although gang affiliation alone is generally an insufficient basis for detention, the Court may consider gang affiliation as a factor supporting detention. *See United States v. Jenkins*, No. 3:17-CR-00124, 2017 WL 2985408, at *4 (M.D. Tenn. July 13, 2017) (noting that without allegations of conspiracy or leadership, "gang membership should be considered as an individualized factor" with the 18 U.S.C. § 3142(g) factors and citing *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1998) (finding, in presumption case under § 3142, that "generalized evidence" of gang associations "is simply insufficient to furnish the mainstay of an order of pretrial detention")); *United States v. Gardner*, No. 16-CR-20135, 2016 WL 2731189, at *3 (E.D. Mich. May 11, 2016) (finding the defendant's membership in the Vice Lords, along with his actively holding himself out as a gang member on social media, to be a factor supporting detention).

no history of steady employment. The Court finds the Defendant's lack of a steady residence or employment indicate that he is a flight risk.

In relation to his physical condition, the Defendant states he has high blood pressure and is a borderline diabetic. The Court observes that the Defendant did not notify the jail of his high blood pressure at his intake interview in December 2019,[4] but the medical staff at the jail subsequently diagnosed him with this condition. The Defendant has been receiving medication for high blood pressure at the jail since March 27, 2020. The Court observes that when weighing a defendant's physical condition, "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic" should be considered as a part of the defendant's "physical and mental condition." *See* Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic*, April 6, 2020, *available at* https://www.justice.gov/file/1266901/download. The Court will consider the health risks to Defendant Chandler in more depth in its subsequent analysis of the specific arguments about COVID-19 in the following section. At this juncture, the Defendant has established that he suffers from hypertension, which is controlled with medication, and the Court will weigh the Defendant's medical condition in its decision.

---

[4] The Defendant introduced his medical records [Exh. 13] from the Blount County Detention Center. These records reflect that at intake on December 13, 2019, the Defendant answered a questionnaire denying any medical problems or chronic medical conditions and denying high blood pressure or diabetes specifically. However, in a medical evaluation that same day, the examiner noted hypertension. Defendant had a medical examination on December 29, 2019, and examiner noted possible high blood pressure and ordered daily blood pressure checks for seven days. On March 27, 2020, the Defendant reported to the medical unit with hypertension, chest pain, and headache, and the examiner prescribed Lisinopril. Defendant Chandler refused to take the Lisinopril on April 6, 2020, which appears to be an isolated incident.

As part of the factor (g)(3)(A) analysis, the Court also considers Defendant's criminal history, including both actual convictions and mere arrests or charges, though the latter will typically weigh less heavily in favor of detention. *United States v. Tolbert*, Nos. 3:09CR56 & 3:10CR30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). Defendant Chandler has two felony convictions for aggravated robbery, for which he served in excess of seven years in prison. The Court observes that the Defendant was arrested for possession of a Schedule I drug seventeen days after his release from prison [Doc. 15, p.7]. Moreover, according to the PSR [Doc. 15, p.8], the Defendant was on bond for that offense, which remains pending and is awaiting presentment to the grand jury, at the time of the conduct alleged in the instant Indictment. Finally, the Defendant admitted to using marijuana daily, including the day before his arrest on the instant offense, which is also while he was on bond. This history of criminal conduct while released on bond indicates to the Court that the Defendant is unwilling to abide by conditions of release, the most basic of which is to commit no other crimes. This finding weighs heavily in favor of detention.

Finally, under the pertinent part of 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947 n.6 (referencing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("[t]he risk of continued narcotic trafficking on bail constitutes a risk to the community")). As the Court previously discussed, the record before the Court establishes that the Defendant was arrested for drug offenses in August 2018, just two weeks after his release from a lengthy prison term and committed other drug offenses while on bond for the August

9

2018 drug allegations. The Court cannot envision conditions that would prevent the Defendant from continuing to endanger the community through drug trafficking.

The Court has also considered the Defendant's proposed conditions of home confinement and supervision by either his fiancé or his father as a third-party custodian. Although the proposed conditions might mitigate to some degree the Defendant's flight risk, the Court finds these conditions are insufficient to protect the community. Home confinement would not hinder the Defendant from conducting drug transactions, as the evidence before the Court reveals that the Defendant participated in a drug transaction in his apartment. Based upon the record before it, the undersigned also has no confidence that either Ms. Thomas or Mr. Towns would be able to influence the Defendant's conduct or would be inclined to report any violations of conditions to the Probation Office or the Court. Accordingly, the Court finds that there are no conditions sufficient to address the Court's concern over the danger that the Defendant poses to the community.

### B. Effect of COVID-19

The Defendant argues that his high blood pressure places him at risk of experiencing serious and potentially life-threatening complications, if he contracts COVID-19. He argues that the efforts made by the jail to prevent the entry or spread of COVID-19 are insufficient, because the virus can be transmitted as an aerosol by asymptomatic individuals, including jail staff who come and go from the facility daily. The Defendant states that he shares a cell with three other inmates, preventing him from employing social distancing measures, and argues that to place himself into lockdown away from other inmates would be extremely punitive. The Defendant

contends the risk of his contracting COVID-19 in the jail overcomes the presumption of dangerousness in this case and warrants his release to home confinement.

Defendant is currently detained at the Blount County Detention Center. The Court is sympathetic to Defendant's concerns and acknowledges the unprecedented nature of COVID-19 pandemic and its effect nationwide and within Tennessee. "[A]s acknowledged by the Centers for Disease Control and Prevention ("CDC"), incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities." *United States v. Terry Pruitt*, No. 17-CR-20183-4, 2020 WL 1698661, at *6 (E.D. Mich. Apr. 8, 2020) (citing *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020)). "These conditions include, among other things, the highly congregational environment, the limited ability of incarcerated persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing), and potentially limited onsite healthcare services. *Id.*

However, "a defendant should not be entitled to temporary release . . . based solely on generalized COVID-19 fears and speculation." *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Instead, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary[.]" *Id.*; *see, e.g.*, *Pruitt*, 2020 WL 1698661 at *6 (holding that "[w]hile the generalized risks of COVID-19 cannot be disputed, courts evaluating whether pretrial release is necessary must evaluate the particularized risks posed to an individual defendant.") (citing *United States v. Lee*, No. 19-20112, 2020 WL 1540207, at *3 (E.D. Mich. Mar. 30, 2020)).

11

As the Court previously detailed in *United States v. Haun*, No. 3:20-cr-24-4 (E.D. Tenn. Apr. 10, 2020) [Doc. 31], the Court will adopt the reasoning of the Eastern District of Michigan and evaluate "the impact of COVID-19 on the pretrial release calculus . . . [under] the following four factors:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Pruitt*, 2020 WL 1698661, at *6 (citing *Clark*, 2020 WL 1446895, at *2). Like Defendant Chandler, the defendant in *Pruitt* sought temporary release pursuant to 18 U.S.C. § 3142(i), and the court found that "these factors have been applied in the context of motions for release under 18 U.S.C. § 3142(i)"[5] and are relevant in a case where the defendant originally consented to detention before seeking pretrial release. *Id.*

First, with respect to the grounds for the Defendant's pretrial detention, the Court has weighed the § 3142(g) factors and finds they demonstrate that Defendant Chandler presents a danger to the community and that no condition or combination of conditions would reasonably assure the safety of the community. This factor weighs decidedly in favor of Defendant's continued detention.

Next, the Court considers Defendant's specific COVID-19 concerns. Defendant Chandler has established that he has hypertension. The Court acknowledges that this condition "may place Defendant in a category of persons with a heightened risk if infected with COVID-19." *See United States v. Patino*, No. 18-CR-20451, 2020 WL 1676766, at *5 (E.D. Mich. Apr.

---

[5] As noted above, under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

12

6, 2020). The Court finds that the Defendant has not documented that he has "borderline diabetes."

However, the Court also considers the measures in place at the Blount County Detention Center to mitigate exposure to the virus. The Government detailed [Doc. 48-1] the procedures in place at the detention facility to ensure the safety of the inmate population, staff, and visitors. First, upon arrival at the detention facility, all inmates have their temperatures checked and must answer COVID-19 screening questions. All new inmates are placed in respective male and female health observation pods for a minimum period of fourteen days and are served meals on Styrofoam trays. Further, all individuals, including employees, have their temperature checked before entering the secured side of the building, outside volunteers are no longer allowed in the building, and only a limited number of video visitation kiosks are operating. All incarcerated inmates receive temperature checks twice weekly, and the entire detention facility is sanitized twice weekly with Electrostatic Clorox cleaning equipment. Inmates are given cleaning supplies a minimum of three times per week. Lastly, inmates are not moved outside the detention facility except for Federal Court transports and life sustaining doctor appointments. Correction deputies now work a 32-hour work week. Finally, if there is a positive test result for COVID-19, the inmate will be transported to the University of Tennessee for treatment.

Chief Cantrell confirmed and further explained these mitigation measures. Additionally, he stated that the population of the jail is greatly reduced, although still twenty-three inmates above capacity. Chief Cantrell stated that inmates are given masks to wear, although they are not required to wear them during their recreation time. He stated that he had never seen the Defendant wearing a mask, and the Defendant was not wearing a mask during the detention hearing. Chief Cantrell stated that all inmates can purchase soap or are given soap upon request,

if they are indigent. He stated that the jail is sanitized weekly with a chemical spray and that inmates are given cleaning supplies to clean their cells three times each week. He said hand sanitizer is not distributed to inmates, because they will ingest it.

Chief Cantrell acknowledged that it is difficult to remain six feet away from other inmates in the jail. However, he stated that inmates have the choice to remain in their cells, rather than coming into the day room for their recreation time and that an inmate can ask to move to "lockdown," which would permit that person to be in a cell alone with one hour of recreation daily. When he has observed Defendant Chandler during recreation time, the Defendant did not appear to be isolating himself. Finally, Chief Cantrell stated that the jail will administer COVID-19 tests, obtained from and/or returned to Blount County Memorial Hospital next door, if an inmate reports exposure to someone with COVID-19 or if an inmate has symptoms such as a persistent, unexplained fever.

In the instant case, there are no confirmed cases of the COVID-19 virus at the Blount County Detention Center. Moreover, the Defendant has failed to show that the mitigation measures in place are not sufficient. Finally, the Court finds no evidence that the detention facility could not provide the Defendant with adequate medical care or transport him to a hospital if he became seriously ill. *See Clark*, 2020 WL 1446895, at *6. "The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify his release." *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020). Although Defendant Chandler has a heightened risk of serious illness, if he contracts COVID-19, he has failed to demonstrate how the measures in place at the detention facility are insufficient to mitigate his risk of contracting the virus or to care for him if he did.

Next, the Court reviews whether the proposed conditions of release are tailored to mitigate or exacerbate other COVID-19 risks to the Defendant. Defendant Chandler proposes to be confined to the home of either his fiancé or his father, both of whom work in the community. The Defendant has no exposure to the public at the detention facility; however, he is exposed to other inmates and the guards. At the detention facility, strict measures are in place to quarantine new inmates, persons with potential exposure, and inmates with symptoms. Moreover, guards have limited interaction with the inmates, have their temperatures checked before each shift, and have access to protective gear. In contrast, if the Defendant were released, he would be exposed to his third-party custodians, who can come and go from the residence freely. Also, Defendant's possible home confinement does not prevent others from visiting the residence. Accordingly, the Court finds that this factor does not weigh in favor of detention or release.

Lastly, Defendant's proposed conditions of release would increase the risk to others of contracting COVID-19. As previously discussed, the Defendant has not abided by the terms of other conditional release. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark*, 2020 WL 1446895, at *7; *see, e.g.*, *United States v. Aiad-Toss*, No. 19-00521, 2020 WL 1514482, at *2 (N.D. Ohio Mar. 30, 2020). Moreover, the Court notes that Defendant Chandler has not taken advantage of protective measures available to him at the jail, such as wearing a mask. The Court finds that this factor weighs in favor of detention.

A review of the combined *Pruitt* factors weighs in favor of Defendant's continued detention. Although the Defendant's hypertension may place him at an increased risk of severe

15

illness if he did contract COVID-19, the Court must balance this risk against his dangerousness to the community, the existence of significant protective measures at the jail, and the risk that he could also contract COVID-19 on release and pass it on to others.[6] The Defendant's medical condition alone is not sufficient to rebut the evidence presented by the Government of the protective measures and monitoring practices at the jail and of the Defendant's dangerousness. *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, *4 (D. Md Mar. 17, 2020) (declining to release dangerous defendant with asthma, hypertension, and diabetes).

The Defendant argues that the possibility of asymptomatic transmission of the virus makes it impossible for the Blount County Detention Center, or any jail, to prevent the spread of the virus and compels his release. However, the Defendant's argument, taken to its logical conclusion, would require the release of all federal pretrial detainees. *See United States Feliciano*, No. 1:19-cr-181, 2020 WL 1984308, at *5 (M.D. Pa Apr. 27, 2020). The Court must adhere to the individualized determination required by the Bail Reform Act and the caselaw applying the Act in the wake of the COVID-19 pandemic. After conducting that analysis, the Court finds the Defendant has failed to present a compelling reason for his temporary release.

## II.  CONCLUSION

Ultimately, an examination of specific factors related to Defendant's individualized risk of contracting the COVID-19 virus does not establish that Defendant's pretrial release is warranted. Further, the Government has proven by clear and convincing evidence that Defendant presents a danger to the community and by a preponderance of the evidence that he is

---

[6] In this regard, the Court notes that the Defendant's motion [Doc. 44, p.11] states that his father, one of his proposed third-party custodians, also suffers from high blood pressure and was recently hospitalized for this condition and kidney failure.

a risk of flight, and that no condition or combination of conditions could reasonably assure the safety the community or his appearance in court. Accordingly, Defendant is **ORDERED DETAINED** pending further proceedings in this case.

    **IT IS SO ORDERED.**

                                  ENTER:

                                */s/ Bruce Guyton*
                                United States Magistrate Judge